IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:23CR3109 |
| vs. | |
| JONATHAN DEAN SCHELLING, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on Defendant's Statement of Objections to the Magistrate Judge's Findings and Recommendation. (Filing No. 102.) For the reasons explained below, the Objection will be overruled.

## BACKGROUND

Defendant agrees with the Magistrate Judge's findings of fact. Therefore, for purposes of brevity, the facts will not be fully set for in this Memorandum and Order. Succinctly stated, this case involves an investigation into suspected drug activity. The investigation started on March 27, 2023 when a confidential informant ("CI") provided information to the Lincoln Lancaster County Narcotics Task Force that an individual known to the CI as "Jon" had previously sold him methamphetamine. (Filing No. 88.) At the direction of Investigators Adam Strode ("Investigator Strode") and Andrew Barksdale ("Investigator Barksdale") of the Task Force, the CI exchanged text messages with "Jon" on March 27 and March 28, 2023 to arrange a meeting for the CI to purchase methamphetamine from "Jon." (Filing No. 62-5; Filing No. 88.) The CI also spoke with "Jon" over the phone on March 28, 2023, which investigators listened to. (Filing No. 84; Filing No. 88.)

After some communications back and forth, the CI and "Jon" agreed to meet in a Walmart parking lot in Lincoln, Nebraska on March 28, 2028. (Filing No. 62-5; Filing No. 84; Filing No. 88.) "Jon" arrived at the Walmart as expected and went inside the store. (Filing No. 88.) The CI identified Defendant from a driver's license photo as the individual he knew as "Jon" and investigators went inside Walmart and placed Defendant under arrest. (Filing No. 88.) Once Defendant was arrested, officers searched the van that Defendant had driven to the Walmart and located methamphetamine. (Filing No. 88.)

Defendant was transported to jail and placed in an interview room where he gave statements to Investigator Barksdale, which included statements about his ownership of two cellphones found at the time of his arrest. (Filing No. 81-1; Filing No. 88.) After Defendant made the statements about the phone, he was given a *Miranda* advisement, signed a *Miranda* waiver, and continued to make statements to Investigator Barksdale until he eventually requested an attorney. (Filing No. 81-1; Filing No. 88.) After Defendant requested an attorney, Investigator Barksdale asked Defendant for the telephone numbers for the two cellphones, which Defendant provided. Filing No. 81-1; Filing No. 88.) On June 1, 2023, a search warrant was issued for the search of the two cellphones. (Filing No. 62-2.)

On September 19, 2023, Defendant was charged with possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1). (Filing No. 1.) Defendant subsequently filed a motion seeking to suppress the evidence arising out of his arrest, the search of the van, his interview with Investigator Barksdale, and the June 1, 2023 search warrant. (Filing No. 61.) The Magistrate Judge held an evidentiary hearing, and thereafter issued a Findings and Recommendation, recommending that the motion to suppress be granted in part and denied in part. (Filing No. 89.)  The Magistrate Judge concluded Defendant's statements about his cellphone numbers that were made following his invocation of right to counsel should be suppressed, but that the motion should otherwise be denied. Defendant filed this Objection to the Magistrate Judge's Findings and Recommendation on March 21, 2025. (Filing No. 102.)

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 636(b)(1), when a party objects to a proposed findings of fact and recommendation by a magistrate judge, the Court must "make a de novo determination of those

portions . . . to which objection is made." Id. See also Gonzales-Perez v. Harper, 241 F.3d 633, 636 (8th Cir. 2001) ("When a party timely objects to a magistrate judge's report and recommendation, the district court is required to make a de novo review of the record related to the objections . . ."). The reviewing district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see Fed. R. Crim. P. 59(b)(3). If desired, a reviewing district court judge may also "receive further evidence or recommit the matter to the magistrate judge with instructions." Id.

When a party contests a magistrate judge's findings that resulted from an evidentiary hearing, the reviewing district court judge does not need to conduct another hearing. See United States v. Raddatz, 447 U.S. 667, 674 (1980) (holding that 28 U.S.C. § 636 "calls for a de novo determination, not a de novo hearing"). Instead, the district court discharges its duty by, at a minimum, listening to a tape recording or reading a transcript of the evidentiary hearing. See United States v. Azure, 539 F.3d 904, 910–11 (8th Cir. 2008). Here, the Court has read the transcript of the hearing and has reviewed the exhibits admitted there.

**DISCUSSION**

Defendant does not take issue with the Magistrate Judge's factual findings, but rather disagrees with her legal conclusions. Defendant contends (1) investigators did not have probable cause to arrest him; (2) investigators did not have probable cause to search the van; (3) he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights; (4) his statements to investigators were involuntary; (5) he unambiguously invoked his right to counsel before making incriminating statements; and (6) the search warrant was invalid and the *Leon* good faith exception does not apply. Defendant's arguments will be considered in turn.

    1.    **Probable Cause to Arrest**

"Probable cause for an arrest exists when the totality of circumstances demonstrates that the arresting officer personally knows or has been reliably informed of sufficient facts to warrant a belief that a crime has been committed and that the person to be arrested committed it." United States v. Reinholz, 245 F.3d 765, 778 (8th Cir. 2001). "Because probable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, the police need not have amassed enough evidence to justify a conviction prior to making

3

a warrantless arrest." *United States v. Webster,* 625 F.3d 439, 442 (8th Cir. 2010). "Arresting officers are not required to witness actual criminal activity or have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest." *United States v. Winarske,* 715 F.3d 1063, 1067 (8th Cir. 2013). *See also United States v. Tilmon,* 19 F.3d 1221, 1228 (7th Cir.1994) ("Probable cause to arrest exists when a reasonably cautious and prudent person would be justified in believing that the individual to be arrested had committed, was committing or was about to commit a crime."); *Tokar v. Bowersox,* 198 F.3d 1039, 1047 (8th Cir. 1999) ("Probable cause does not require a prima facie showing of criminal activity, but only the probability of criminal activity."). In making a probable cause determination, "[l]aw enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Henderson,* 613 F.3d 1177, 1181 (8th Cir. 2010) (internal quotation omitted).

Defendant argues investigators did not have probable cause for his arrest because he was not engaged in criminal activity when he parked his car at Walmart. While it is true that mere presence in a location known to be involved in criminal activity does not establish probable cause to arrest, Defendant was not arrested merely because of his physical location. *See United States v. Everroad,* 704 F.2d 403, 406 (8th Cir. 1983). Rather, investigators believed Defendant had committed or was committing a drug crime based on information provided by the CI.

A similar situation was presented to the Eighth Circuit in *United States v. Taylor*, 106 F.3d 801, 802 (8th Cir. 1997), where a newly acquired informant—under officers' supervision— arranged for the delivery of methamphetamine to a motel. When the defendant arrived at the motel to meet with the informant, the defendant found police waiting and was placed under arrest. Distinguishing *Everroad*, the Eighth Circuit held that probable cause for the defendant's arrest was not simply supplied by the defendant's location, but rather was based on corroborated information supplied by the informant. Thus, the question in the present case, as was true in *Taylor*, is whether the CI was sufficiently trustworthy to support the investigators' belief that Defendant was engaged in criminal activity.

"An informant may establish the reliability of his information by establishing a track record of providing accurate information." *United States v. Brown,* 49 F.3d 1346, 1349 (8th Cir.1995) (citing *Illinois v. Gates,* 462 U.S. 213, 233 (1983)). However, if an informant is otherwise unknown

4

to police and has no proven track record of reliability, police may still deem an informant reliable and make a finding of probable cause when an informant's information is at least partly corroborated. *Id.* See also *United States v. Amaya,* 52 F.3d 172, 174 (8th Cir. 1995) ("Where a previously unknown informant provides information, the informant's lack of a track record requires some independent verification to establish the reliability of the information."). An informant, even if previously unknown, may prove himself to be a reliable source for law enforcement by providing predictive information about a meeting time or place if the information is corroborated. *See Taylor,* 106 F.3d at 803 (finding confidential informant with a criminal record whose reliability was otherwise unknown was reliable where the informant correctly predicted date and location of drug transaction). Informants may also prove themselves to be reliable if they are able to provide matching descriptions. *See United States v. Cardenas*, Crim. No. 15-198(1), 2016 WL 184390, at *3 (D. Minn. Jan. 15, 2016) (stating that the reliability of an informant's information is "bolstered if the tip is corroborated not only by matching an identity or description, but also by accurately describing a suspect's future behavior").

Here, officers did not have a "track record" with the CI. The CI had just become an informant the day before the arrest. However, investigators were able to sufficiently corroborate the information supplied by the CI—thus supplying the requisite probable cause. The CI told officers that an individual by the name of "Jon" had sold him methamphetamine in the past. Investigators directed the CI to send "Jon" text messages to arrange a meeting time and place for a methamphetamine sale. Officers directed and viewed the text messages between the CI and "Jon" and listened to a phone conversation between the CI and "Jon." Investigators reviewed and heard the communications that included specific details of the drug transaction, including the meeting time, place, and type of vehicle "Jon" would be driving. When a vehicle matching the description "Jon" provided pulled into the Walmart parking lot and parked near the middle of the lot (as "Jon" said he would") the CI was able to identify Defendant as "Jon" using a driver's license photograph under Defendant's name—Jonathon Schelling. Even more, "Jon" texted the CI around that time to indicate that he was shopping in the Walmart. The CI was able to provide detailed predictive information about the time and place of the planned meeting which was all coordinated with investigators and corroborated by officers through surveillance and other investigative techniques. Under the totality of the circumstances, it was reasonable for investigators to believe criminal

activity was occurring. Accordingly, the Court finds Defendant's warrantless arrest was supported by probable cause.

### 2. Probable Cause to Search Van

Defendant argues investigators did not have probable cause to justify the warrantless search of the van. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. Gant*, 389 U.S. 347, 357 (1967). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant,* 556 U.S. 332 (2009). Under this exception, officers may search a vehicle incident to an arrest if (1) the arrestee is unrestrained and "within reaching distance of the passenger compartment" when the search begins or (2) "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant,* 556 U.S. at 343, 346. "Under the second *Gant* exception, officers may conduct a warrantless search of a vehicle incident to arrest—even after the arrestee is restrained in the back of a patrol vehicle—when officers have a reasonable basis to believe the vehicle contains evidence related to the crime of arrest." *United States v. Stegall*, 850 F.3d 981, 984 (8th Cir. 2017).

Another such exception to the warrant requirement is the so-called "automobile exception," which "authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004). This exception is distinct from the search-incident-to-lawful-arrest exception. "The automobile exception requires probable cause to believe contraband or evidence of *any* crime will be found in the vehicle, not merely reason to believe evidence of the crime of arrest will be found." *United States v. Shackleford*, 830 F.3d 751, 753 n.2 (8th Cir. 2016).

The Magistrate Judge concluded the automobile exception to the warrant requirement authorized the search. The Court agrees.[1] There was probable cause to arrest Defendant based on

---

[1] Though it is unnecessary to reach this issue, the Court finds that the search incident to arrest exception would also justify the warrantless search of the van. The CI planned to purchase methamphetamine from Defendant. The transaction was to take place in the Walmart parking lot. Thus, it was reasonable for investigators to believe Defendant would have brought methamphetamine with him, and when he did not have any methamphetamine on his person at the time of his arrest, it was reasonable for investigators to believe it was in the vehicle Defendant arrived in.

suspected drug activity—the entire purpose for Defendant to meet with the CI was to sell him drugs. This being the case, it was highly probable that drugs would be present in the van. *See United States v. Parish,* 606 F.3d 480, 487 (8th Cir. 2010) ("Because the only purpose of the arranged meeting was for [the defendant] to distribute drugs, the police had probable cause to believe that evidence relevant to the drug crime would be found in the vehicle."). Given the totality of the circumstances, the warrantless search of the van was constitutional.

   3.   **Miranda**

Defendant argues his statements must be suppressed because he was not properly advised of his rights afforded by *Miranda v. Arizona,* 384 U.S. 436, 484 (1966) and did not knowingly and voluntarily waive his *Miranda* rights. "A defendant's waiver of his *Miranda* rights must be made voluntarily, knowingly, and intelligently." *United States v. Duran,* 109 F. Supp.3d 1093, 1102 (D. Minn. 2015). In evaluating whether a waiver was made voluntarily, knowingly, and intelligently, courts examine (1) whether the waiver was the product of a free and deliberate choice rather than intimidation, coercion, or deception and (2) whether the suspect waived his rights with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.* In assessing voluntariness, courts look at the totality of the circumstances, including not only the conduct of the police, but also the defendant's ability to resist police pressure. *Id.* In evaluating the totality of the circumstances, courts consider the defendant's maturity level, education, physical condition, and mental condition. *United States v. Sanchez*, 614 F.3d 876, 883 (8th Cir. 2010).

Defendant maintains he was confused and did not understand his *Miranda* rights, and therefore could not have waived them knowingly and intelligently.[2] Defendant points to his responses in which he indicated he "kinda" understood his rights. (Filing No. 81-1.) Defendant argues that while he answered Investigator Barksdale's questions, there is no evidence that he *understood* his *Miranda* rights and was making a deliberate choice to speak with Investigator Barksdale with those rights in mind. Contrary to Defendant's argument, a review of the evidence

---

[2]Defendant apparently does not take issue with the admissibility of the statements he made about the cellphones prior to being given his *Miranda* advisement. This issue was not raised in his Objection. However, to the extent Defendant claims these pre-*Miranda* statements should be excluded, the Court agrees with the Magistrate Judge's analysis on this issue. Therefore, the Court would a deny a request to exclude these statements.

7

shows that Defendant did, in fact, understand his *Miranda* rights. Not only did he verbally indicate he understood them, but he also stated he did not have additional questions after having his rights explained in detail. (Filing No. 81-1.) Moreover, he pondered aloud whether he needed an attorney, indicated he may decide not to answer questions depending on what they were, and ultimately invoked his right to counsel. (Filing No. 81-1.) The Court has little trouble concluding that Defendant understood his rights when he signed the *Miranda* waiver.

Defendant also argues he did not voluntarily, knowingly, and intelligently waive his *Miranda* rights because he was not in the state of mind or have the capacity to provide a valid waiver or make voluntary statements. Defendant points out that he informed Investigator Barksdale that he did not feel well, was not thinking right, was not stable, had high anxiety, was diabetic, bipolar and disabled. Still, "[e]ven if a suspect has a somewhat diminished capacity to resist coercion due to a mental defect . . . a *Miranda* waiver will not be invalidated on that basis if there is no evidence of police coercion." *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011). There is no evidence of coercion in this case. Defendant was not placed in a police-dominated atmosphere. Investigator Barksdale was the only officer present in the interview room. Further, the entire encounter was conversational—Defendant was not threatened or made promises. Investigator Barksdale did not raise his voice or otherwise display any aggressive behavior. Defendant was 35 years-old at the time of the interview with a high school education. He also had previous experience with law enforcement—which made him familiar with the protections afforded by the legal system, including his right to remain silent and have counsel present during questioning.

Further, the evidence also shows Defendant possessed the necessary level of comprehension to knowingly and intelligently waive his rights. *See United States v. Phillips*, 506 F.3d 685, 687 (8th Cir. 2007) (finding the defendant's waiver was knowing because he was lucid, cooperative, and "did not appear to be so intoxicated that he was unaware of his rights and the consequences of waiving those rights"). Defendant understood what was happening and was able to communicate effectively with Investigator Barksdale. He asked coherent, appropriate questions and gave coherent, appropriate responses to questions. Defendant's ability to engage in a lucid and intelligible discussion with Investigator Barksdale supports a finding of a valid waiver, despite his purported mental and physical impairments. *See United States v. Osorio*, 110 F.4th 1089, 1099

(8th Cir. 2024) (finding *Miranda* waiver knowing and voluntary despite the defendant's diminished intellectual capacity where the defendant appeared to understand what was transpiring and communicated effectively). The evidence shows Defendant had a full awareness of both the nature of the rights he was giving up, and the consequences of the decision to give up those rights. Therefore, the Court finds Defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights.

### 4.    Voluntariness of Statements

In addition to claiming his *Miranda* waiver was involuntary, Defendant argues his statements to investigators were just overall involuntary. "Statements to law enforcement authorities are voluntary if they are the product of an essentially free and unconstrained choice by [their] maker . . . A statement is not considered involuntary unless the police extorted it from the accused by means of coercive activity." *Vinton*, 631 F.3d at 482 (internal quotations and citations omitted). "The appropriate test for determining whether a statement or confession is voluntary is whether the alleged statement or confession was extracted by threats, violence, or direct or indirect promises, such that [an individual's] will is overborne and his ... capacity for self-determination critically impaired." *United States v. Gipp*, 147 F.3d 680, 683 (8th Cir. 1998) (internal quotation omitted).

In making the voluntariness determination, courts consider "the totality of the circumstances," and assess "the conduct of law enforcement officials and the suspect's capacity to resist any pressure." *United States v. Kilgore*, 58 F.3d 350, 353 (8th Cir. 1995). Factors taken into consideration in performing this assessment include: (1) the suspect's age; (2) the suspect's intelligence and education; (3) whether the suspect was intoxicated or under the influence of drugs; (4) whether the suspect consented after being informed of his right to withhold consent or his *Miranda* rights; and (5) whether the suspect, because of having been previously arrested, was familiar with the protections afforded by the legal system. *United States v. Griffith*, 533 F.3d 979, 984 (8th Cir. 2008).

As stated above, there is no evidence of coercive activity by investigators in this case. Defendant was not threatened, nor was he made any promises. Defendant's interaction with Investigator Barksdale was entirely professional. Defendant argues Investigator Barksdale coerced

9

Defendant into making statements by telling him that an attorney would not be available until the following day. However, a review of the recording of the encounter shows that Investigator Barksdale was not communicating this to Defendant to trick Defendant into making a statement. While Defendant was told an attorney was unavailable at that time, Defendant was also told the interview could be postponed so an attorney could be present. Defendant apparently understood this, but decided to make statements anyway. Further, as discussed previously, Defendant's age, intelligence and education, lack of intoxication, waiver of his *Miranda* rights, and experience with the protections afforded by the legal system all indicate voluntariness.

### 5. Invocation of Right to Counsel

Defendant argues the Magistrate Judge erroneously concluded that he did not immediately make an unambiguous request for counsel after being provided his *Miranda* advisement. After answering questions for a few minutes, Defendant indicated he wanted to talk to an attorney, stating "just throw me behind the bars until I see somebody," to which Investigator Barksdale asked, "what do you mean by that?," and Defendant responded "Talk to a [sic] attorney." (Filing No. 81-1.) Shortly after that, Investigator Barksdale asked Defendant for the phone number for the cellphones, which Defendant provided. (Filing No. 81-1.) Though the Magistrate Judge found that Defendant unambiguously requested counsel right before being asked about the phone numbers (and thus recommended suppression of the statements about the phone numbers), the Magistrate Judge concluded that prior to that point, an unambiguous request for counsel had not been made. The Court agrees.

"[A] suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning." *Davis v. United States*, 512 U.S. 452, 457 (1994). "[I]f a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Id*. This rule "requires courts to determine whether the accused actually invoked his right to counsel." *Id.* at 459 (quotation omitted). Invocation of the right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Id.* (quotation omitted). "But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have

10

understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning"—"[r]ather, the suspect must *unambiguously* request counsel." *Id*. (emphasis added). And "the Supreme Court has declined to adopt a rule requiring officers to clarify ambiguous requests for counsel." *United States v. Mohr*, 772 F.3d 1143, 1146 (8th Cir. 2014).

The Court agrees with the Magistrate Judge's determination that Defendant did not unambiguously invoke his right to counsel until just before he provided the phone numbers to Investigator Barksdale. Investigator Barksdale asked Defendant whether he understood he had the right to counsel, to which Defendant responded, "I could have county attorney," and then followed that up with "can I have county attorney?" (Filing No. 81-1.) Investigator Barksdale tried to clarify Defendant's question, by asking "you mean like a public defender?," to which Defendant responded "uh huh." (Filing No. 81-1.) Defendant contends his "uh huh" statement made in reference to a public defender constituted an effective invocation of his right to counsel, such that all questions asked after that point should be suppressed. Heard in context, however, Defendant's "uh huh" response was not even close to an unambiguous request for counsel.

In response to Defendant's "uh huh" statement, Investigator Barksdale asked Defendant if he wanted a public defender, and Defendant responded by asking if there was someone who could be with him. (Filing No. 81-1.) However, it was not clear whether Defendant was specifically referring to an attorney or to just someone else in general. For instance, while in the interview room, Defendant asked for his mother and said he wanted to call her. (Filing No. 81-1.) It is possible that he was referring to her when he asked about having another individual present. After some back and forth during which Investigator Barksdale was trying to determine whether Defendant wished to speak to him, Investigator Barksdale asked Defendant "You do not want a lawyer here right now?," to which Defendant responded "We'll see—you can ask me the questions, if I don't want to answer—I'll just say no." (Filing No. 81-1.) A reasonable officer in Investigator Barksdale's position would not have understood Defendant's "uh huh" response or his other comments to be an invocation of rights.

11

6.     **Validity of Search Warrant**

Defendant argues the search warrant for the phones was not supported by probable cause as required by the Fourth Amendment. An affidavit used to support issuance of a warrant "establishes probable cause if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the place to be searched." *United States v. Cowling*, 648 F.3d 690, 695 (8th Cir. 2011) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983) "A probable cause determination is based on the totality of the circumstances." *Cowling*, 648 F.3d at 695. However, where, as is partly the case here, "information supplied by an informant forms the basis for probable cause in a warrant, the core question in assessing probable cause is whether the information is reliable." *United States v. Nieman*, 520 F.3d 834, 839-40 (8th Cir. 2008) (internal quotation omitted).

Defendant argues Investigator Barksdale's affidavit used to support issuance of the warrant did not supply probable cause because it was void of any information about the CI's background and reliability, and it also lacked evidence that investigators corroborated the CI's information. The Court disagrees. The warrant affidavit stated that Investigator Barksdale received information from a CI that Defendant was a large source of methamphetamine. The affidavit went on to describe the text messages, phone call, and how the investigation unfolded, including the CI's identification of Defendant using a driver's license photograph. The affidavit described in detail how the investigation was arranged by investigators, in coordination with the CI and how everything occurred as planned. Then, armed with probable cause to arrest Defendant, investigators found two phones on his person and searched his vehicle and located methamphetamine. There was sufficient information in the warrant to supply probable cause that evidence of drug distribution activities would be found on the phones.

Moreover, even if the warrant was not supported by probable cause, the evidence seized would nevertheless be admissible under the *Leon* good-faith exception to the exclusionary rule. "Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States. v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). A "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the issuing

judge's authorization." *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (quotation omitted). An officer's reliance on a warrant may be said to be unreasonable in four circumstances: (1) when the affidavit supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for the truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when it is entirely unreasonable to believe that an affidavit provides probable cause to issue a warrant; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid. *Proell*, 485 F.3d at 431 (quotation omitted).

Defendant contends *Leon* is inapplicable because Investigator Barksdale misrepresented information in the warrant.[3] Specifically, Defendant contends the warrant affidavit incorrectly states that text messages between Defendant and the CI show that Defendant was going to provide the CI with "2 ounces of methamphetamine for $800 dollars." (Filing No. 62-2.) Defendant complains that the communications do not actually mention the word "drugs" or "methamphetamine." However, even though the communications may not use those exact words, Investigator Barksdale's inferences as to what was being discussed were reasonable based on his experience and the investigation as a whole.

The CI told Investigator Barksdale that "Jon" had sold him methamphetamine in the past. Investigators directed conversations between the CI and "Jon" to arrange for the sale of methamphetamine. During these conversations, quantities and pricing were discussed. Investigator Barksdale testified that comparing the amount of ounces requested with the prices discussed, it was consistent with methamphetamine deals. He also testified, based on his training and experience, that be believed the quantity "two ounces" meant methamphetamine. Further, he testified based on his training experience that phrases such as "two ounces of methamphetamine" are not typically used because such statements would make things easier for cops to see. Also, prior to applying for the warrant, methamphetamine was found in the van. There is no indication

---

[3] The government contends that Defendant did not argue that there were misstatements in the warrant affidavit until he filed his Objection to the Magistrate Judge's Findings and Recommendation. While this issue does not appear to have been raised by Defendant in his earlier briefing, it seems the issue may have been somewhat explored at the evidentiary hearing. Therefore, the Court will address this argument in its Order.

that Investigator Barksdale's reliance on the warrant was unreasonable. Thus, the evidence seized would be admissible under the *Leon* good-faith exception.

Finally, Defendant argues the warrant itself was "fruit of the poisonous tree" and accordingly the evidence obtained from the warrant must be excluded. This argument is rejected because, as explained above, the evidence used to support the warrant was constitutionally obtained. Although the Magistrate Judge did recommend suppression of Defendant's statements about the cellphone numbers, this information was not necessary for a finding of probable cause for the warrant, nor are Defendant's pre-*Mirandized* comments in which he identified the phones. Therefore, Defendant's request for suppression of the evidence obtained from the search warrant will be denied.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Objection (Filing No. 102) is overruled.

2. The Magistrate Judge's Findings and Recommendation (Filing No. 89) is accepted in its entirety.

3. Defendant's Motion to Suppress (Filing No. 61) is granted in part and denied in part as found by the Magistrate Judge.

4. This matter will be set for trial by separate order.

Dated this 2nd day of May, 2025.

BY THE COURT:

Susan M. Bazis
United States District Judge